UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Davonte Martin,

        Petitioner,               Case Number: 21-12616
                                                Hon. George Caram Steeh

v.

John Davids,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS AND
## GRANTING CERTIFICATE OF APPEALABILITY

Davonte Martin, proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for carjacking. He raises two claims for relief. The Court finds that Petitioner's claims do not warrant relief and denies the petition. The Court grants a certificate of appealability as to both issues.

**I.  Background**

Following a jury trial in Wayne County Circuit Court, Martin was convicted of carjacking under an aiding and abetting theory. Martin filed an appeal by right in the Michigan Court of Appeals. The Michigan Court of Appeals set forth the following relevant facts:

On January 8, 2013, NW and his girlfriend, TL, travelled from Ann Arbor to Detroit to purchase heroin.  Their regular dealer was not available and they parked at a liquor store to find another source.  The couple saw three young men exit the store and NW waved them over.  These men were Jesse Johnson, Darcell Whittaker, and Whittaker's brother, the current defendant, Davonte Alexander Martin.  Whittaker spoke to NW and agreed to introduce them to a heroin dealer.  Johnson, Whittaker, and Martin climbed into the backseat of the vehicle and directed TL to drive to a nearby home.

At the home, Whittaker told NW that the dealer was very suspicious and convinced NW to turn over the car keys, his cell phone, and money. Whittaker exited the car and NW followed. NW asked Whittaker what was happening and Whittaker confessed that he was robbing them.  NW tried to grab the keys and his phone back from Whittaker.  Whittaker responded by punching NW in the face.  Martin and Johnson exited the vehicle and joined in beating NW.  Martin later claimed that he only joined the fight because he was not aware of the robbery plan and thought NW was attacking his brother. The men continued to beat NW after he fell to the ground.

As the men beat NW, TL locked herself in the car.  At some point, Whittaker returned to the car and tried to break a window with his elbow. When that failed, Whittaker threatened to shoot TL if she did not exit the vehicle.  TL opened the door and Whittaker grabbed her purse and laptop, which were resting by her feet.  Whittaker ordered TL to enter the house.  As Whittaker followed TL into the house, either Johnson or Martin dragged NW over to a tree.  That man then punched NW in the face multiple times.  NW could not identify which man continued the attack.

Inside the house, Whittaker punched and forcibly raped TL. Whittaker then went back outside but ordered TL to stay in place. Whittaker returned with NW and the man who beat him under the tree. TL later identified that man as Johnson. Whittaker pushed NW to the ground and put his knee on NW's back to hold him down. NW believed Whittaker held a gun to

- 2 -

> the back of his head. Johnson forcibly raped TL, and Whittaker raped her again. The men ultimately stole the car, a laptop, jewelry, money, and a cell phone from TL and NW.
>
> Martin never entered the home and did not lay hands on TL. Indeed, evidence established that Martin left the scene before Johnson entered the home with Whittaker and NW.  However, Martin admitted to punching NW several times.  NW's injuries were severe.  He required surgery in which a titanium plate was placed in his left cheek, his jaw was stitched back together, and blood was drained from his ear to reduce swelling.  NW suffered brain damage, vision problems, and short-term memory loss.
>
> In the initial investigation, officers identified Whittaker and Johnson.  In 2016, Johnson pleaded guilty to assault with intent to murder (AWIM), armed robbery, kidnapping, carjacking, torture, and two counts of first-degree criminal sexual conduct (CSC-I).  Whittaker eventually pleaded guilty in 2019 to torture, AWIM, armed robbery, kidnapping, and three counts of CSC-I. However, the third suspect was initially misidentified as the person who owned the home where the offenses occurred. That person was jury acquitted.
>
> Martin was not arrested until November 2018. Martin waived a jury trial, and was tried by the bench for torture, AWIM, armed robbery, kidnapping, and carjacking. The court convicted Martin only of carjacking on an aiding and abetting theory. The court sentenced Martin to 16 to 25 years' imprisonment.

*People v. Martin*, No. 350499, 2021 WL 298132, at *1-2 (Mich. Ct. App. Jan. 28, 2021).

The Michigan Court of Appeals affirmed Martin's conviction and sentence.  *Id.* Martin filed an application for leave to appeal in the Michigan

Supreme Court. The Michigan Supreme Court denied leave to appeal. *People v. Martin*, 507 Mich. 1007 (Mich. July 6, 2021).

Martin then filed this habeas corpus petition. He raises two claims: (i) he was denied his Fourteenth Amendment right to due process because insufficient evidence supported the conviction, and (ii) defense counsel was ineffective for failing to prepare for trial, call witnesses, and effective cross-examine prosecution witnesses.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the

- 4 -

Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that

state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). This presumption is rebutted only with clear and convincing evidence. *Id.* Moreover, for claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

#### A. Sufficiency of the Evidence

In his first claim, Martin asserts that the prosecution failed to present sufficient evidence to support his carjacking conviction.

The Michigan Court of Appeals denied this claim on direct review:

MCL 750.529a proscribes carjacking, in relevant part, as follows:

> (1) A person who in the course of committing a larceny of a motor vehicle uses force or violence or the threat of force or violence, or who puts in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years.
>
> (2) As used in this section, "in the course of committing a larceny of a motor vehicle" includes acts that occur in an attempt to commit the larceny, or during commission of the

- 6 -

larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the motor vehicle.

MCL 767.39 provides for convictions on an aiding and abetting theory, subject to the same punishment as a principal. To support a conviction on an aiding and abetting theory, the prosecution must prove that the crime occurred, the defendant "performed the acts or gave encouragement that assisted the commission of the crime," and that the defendant either intended the commission of the crime or knew the principal intended to commit the crime when he gave aid and encouragement. *People v. Robinson*, 475 Mich. 1, 6; 715 N.W.2d 44 (2006). "Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that a defendant aided or assisted in the commission of the crime." *People v. Norris*, 236 Mich. App. 411, 419-420; 600 N.W.2d 658 (1999).

Martin asserts that he did not know that Whittaker and Johnson planned to carjack or even rob NW and TL. Although Martin admits that he punched NW outside the car, he insists that he was acting in defense of his brother, not assisting a carjacking. However, a defendant's intent cannot be ascertained just by his or her assertions; otherwise every defendant would simply make denials. Rather, "[a]n aider and abettor's knowledge of the principal's intent can be inferred from the facts and circumstances surrounding an event." *People v. Bennett*, 290 Mich. App. 465, 474; 802 N.W.2d 627 (2010). Relevant to this analysis are whether there was a "close association between the defendant and the principal, the defendant's participation in planning or executing the crime, and evidence of flight after the crime." *Norris*, 236 Mich. App. at 421…

Martin has a close association with Whittaker; they are brothers. Martin got into a car occupied by strangers in a liquor store parking lot and listened as Whittaker directed them to an unknown house. He sat back and listened as Whittaker described the drug dealer as suspicious and instructed NW to give him the car keys, his wallet, and cell phone. It can be

- 7 -

>inferred that Martin was aware of the carjacking plan based on his knowledge of this conversation. Martin was nearby when Whittaker threw the first and only punches against NW. Martin not only punched NW, he continued to beat NW when he fell onto the ground. This was evidence of intent beyond defense. Moreover, Martin fled on foot after joining in the assault, rendering no aid to and seeking no assistance for NW and TL who were quite obviously in a very dangerous situation.
>
>From this evidence, the court could conclude beyond a reasonable doubt that Martin knowingly participated in an assault to further a carjacking. On this record, Martin is not entitled to relief.

*Martin*, 2021 WL 298132, at *2-3.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge focuses on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

Sufficiency-of-the-evidence claims, in light of both *Jackson* and AEDPA, face a high bar in habeas proceedings because they are subject to two layers of deference:

>First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from

> evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.
>
> *Coleman v. Johnson*, 566 U.S. 650, 651, 132 S. Ct. 2060, 182 L.Ed.2d 978 (2012) (per curiam) (citations and internal quotation marks omitted).

*Tackett v. Trierweiler*, 956 F.3d 358, 367 (6th Cir. 2020)

Martin has not shown that the Michigan Court of Appeals' decision denying relief on this claim was contrary to, or unreasonably applied, clearly established federal law. It is for the factfinder, in this case the judge, to weigh the evidence, assess the witnesses' testimony, and resolve any conflicts in the testimony or issues of witness credibility. *Jackson*, 443 U.S. at 319. The factfinder, not a federal court on habeas review, has the responsibility "to draw reasonable inferences from basic facts to ultimate facts." *Id.* Here, the evidence of intent was circumstantial, but that does not make the evidence inferior or weaker. "'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'" *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954) (circumstantial

evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more").

NW attempted to retrieve the car keys from the main perpetrator in Martin's presence. After the main perpetrator hit NW, the other two men (including Martin) joined in beating him. Martin admitted he was present and that he struck NW twice. He claimed to have then fled the scene. But NW's and TL's testimony contradicted Martin's claims. There was evidence presented that Martin kept watch over NW while the other two men took TL into the house to rape her, and that, at some point, all three perpetrators were in the house with TL and NW. TL also testified that after NW fled, the three men surrounded her and ripped off her jewelry. Then, the main perpetrator took her back into the home and told her that "they were going to take [her] car and [she] needed to stay in the house." (ECF No. 6-11, PageID.514.) He then left the home and she heard her car start. When she left the home, her car was gone.

The case is a close one, since it is possible that Martin was unaware of the intentions of the other two men. But the Court is also mindful that "Michigan has a broad definition of 'aiding and abetting,' which includes '*all* forms of assistance rendered to the perpetrator of a crime and comprehends all words or *deeds* that might support, encourage, or incite

- 10 -

the commission of a crime." *Galvan v. Stewart,* 705 F. App'x 392, 399 (6th Cir. 2017) (citing *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999) (emphases added in *Galvan*). Viewing the evidence in the light most favorable to the prosecution, and applying AEDPA's extremely deferential standard of review, the Court holds that the state court's finding of sufficient evidence was not an unreasonable application of federal law.

### B. Ineffective Assistance of Counsel

In his second claim, Martin maintains that defense counsel was ineffective for failing to prepare for trial, failing to call witnesses and failing to conduct effective cross-examination of prosecution witnesses. He claims that NW and TL's prior inconsistent statements would have shown that the fight outside the car was not about car keys and that the carjacking did not occur until after Martin left the scene.

On habeas corpus review, to prevail on an ineffective assistance of counsel claim, Petitioner must show that the state court's denial of his claim was contrary to, or an unreasonable application of, *Strickland v Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: a habeas petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *See id.* at 687.

The standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (*quoting Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).  In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted).  "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

The Michigan Court of Appeals, after reciting the correct standard, held that counsel was not ineffective:

> Martin next contends that his trial attorney was ineffective in failing to impeach NW and TL with prior statements about the cause of the fight outside the car. NW and TL gave statements to the police responding to the scene and at the hospital. They made statements to the treating medical providers. They also provided testimony at preliminary examinations and trials related to the charges levied against Whittaker, Johnson, and the wrongly accused NS. Martin contends that the victims did not mention until this trial that NW and Whittaker fought over the car keys outside the car. NW's attempt to regain the car keys is a key piece of evidence, Martin asserts. Without this evidence, Martin contends that the prosecution could not prove that he knew Whittaker planned to carjack the victims or disprove that Martin only entered the fight to defend his brother. Accordingly, Martin urges that his counsel was ineffective for

failing to highlight the victims' previous failure to mention this fact.

\*\*\*

Martin attempted to expand the record on appeal by attaching to his appellate brief various documents including police reports and a warrant request. As Martin did not seek this Court's approval to expand the record, we may not consider those documents. *See People v. Horn*, 279 Mich. App. 31, 38; 755 N.W.2d 212 (2008). We note, however, that these records do not reveal prior statements that would have altered the outcome of Martin's trial. Although TL and NW initially lied about the reason for their visit to Detroit and NW was confused about events in the aftermath of his beating and traumatic brain injuries, the victims always asserted that the perpetrators took their keys and ordered NW out of the car just before the attack. Martin was in the car with Whittaker and the victims when these events transpired. The victims' statements in these documents support that the fight was in furtherance of stealing the victims' vehicle, and that Martin would be aware of that fact.

In any event, defense counsel did extensively cross-examine TL and NW about their prior statements. Counsel elicited testimony from NW that he did not remember speaking to the police at the scene. NW only remembered testifying once before, not twice. Counsel emphasized several inconsistencies between NW's prior testimony and police statements and his testimony on direct in this case. He also brought out multiple inconsistencies between TL's testimony on direct and her prior testimony at Johnson's and NS's trials and during prior hearings. Defense counsel highlighted that both NW and TL previously identified NS as the third offender in this incident, and still could not identify Martin. Counsel elicited testimony from TL that she and NW initially coordinated their story and lied about their purpose in visiting Detroit to hide their drug activity. Given the extent of the cross-examination, we cannot find counsel ineffective for failing to zero in on the specific piece of information identified by Martin on appeal.

> On cross-examination of the officer in charge of the investigation, defense counsel attempted to introduce into evidence a police report that purportedly included prior inconsistent statements made by TL and NW. During recross, counsel attempted to present the actual report into evidence. The court excluded the report on hearsay grounds. Martin characterizes this belated attempt to introduce a police report into evidence as "an effort to make up for" his prior "deficiency" in questioning the victims. Counsel was not deficient, however, and his action in questioning the officer does not alter our conclusion.

*Martin*, 2021 WL 298132, at *3-4.

Defense counsel's cross-examination of TL and NW focused extensively on their prior inconsistent statements. But Martin maintains that counsel could have done more. For example, Martin claims that TL's preliminary examination testimony would have shown that the fight was not over the car keys and that the car was stolen after Martin left the scene. But much of TL's preliminary examination testimony was incriminating for Martin. For instance, TL testified that all three perpetrators were in the house at one point looking for the car keys and threatening to shoot her and NW if the keys weren't located. It would have been reasonable for counsel to conclude that questioning TL on specific parts of her preliminary examination testimony was not in the best interest of the defense. The record established by defense counsel on cross-examination ably

demonstrated the witnesses' inconsistent statements and explored gaps in their memories.

Defense counsel's representation was not flawless, but "[t]he Sixth Amendment guarantees reasonable competence not perfect advocacy." *Yarborough v. Gentry*, 540 U.S. 1, 6, (2003). *See also United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006) (holding that a defendant is guaranteed "effective (not mistake-free) representation."). After reviewing the counsel's cross-examinations of these witnesses and comparing it to the alleged deficiencies identified by Martin, the Court concludes that the Michigan Court of Appeals' denial of this claim was not "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

### IV. Certificate of Appealability

To appeal the Court's decision, Martin must obtain a certificate of appealability. To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). A petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473,

484 (2000). A federal district court must grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *See Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

The Court concludes that reasonable jurists could debate whether the sufficiency of the evidence and ineffective assistance of counsel claims should have been resolved in a different manner. Thus, the Court will grant a certificate of appealability for these claims.

## V. Conclusion

For the reasons discussed, the Court DENIES the petition for writ of habeas corpus.

The Court GRANTS a certificate of appealability as to Petitioner's sufficiency of the evidence and ineffective assistance of counsel claims.

The Court DENIES Petitioner's Motions for Immediate Consideration (ECF Nos. 12, 13) as MOOT.

SO ORDERED.

s/George Caram Steeh  
HON. GEORGE CARAM STEEH  
UNITED STATES DISTRICT JUDGE

DATED: July 1, 2024

- 17 -

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on July 1, 2024, by electronic and/or ordinary mail.

s/LaShawn Saulsberry
Deputy Clerk